FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★  AUG 1 8 2006  ★
P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
J&J SPORTS PRODUCTIONS, INC.,
as Broadcast Licensee of the December 3,
2005 Taylor/Hopkins II Program,

        Plaintiff,

- against -

DAVID SEATTS, ALAN YOUNG,
individually and as officers, directors,
shareholders and/or principal of Tavern on
Nostrand, Inc. d/b/a Tavern on Nostrand, and
TAVERN ON NOSTRAND, INC., d/b/a
Tavern on Nostrand,
        Defendants.
------------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER**

CV-06-1221 (BMC) (SMG)

**COGAN, District Judge.**

This case is before the Court on plaintiff's motion for a default judgment as a result of defendants' failure to answer or appear.

Plaintiff owns the distribution rights for a pay-per-view television event known as the "Taylor/Hopkins II Boxing Event" (the "Event"). On December 3, 2005, defendant Tavern On Nostrand, Inc. (the "Tavern") stole the signal and exhibited the Event in its commercial establishment for the benefit of itself and its patrons. Defendants David Seatts and Alan Young are the owners or managers of the Tavern.

The Event was distributed by way of satellite uplink and then retransmitted to cable and satellite distributors. Theft of a signal transmitted in this manner violates the Communications Act of 1934, 47 U.S.C. § 605 (1996). See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123 (2d Cir. 1996). Because plaintiff distributed the Event by closed

circuit cable television, defendants' theft of the signal also violates §553(a)(1). The Second Circuit has held that when both statutes apply, a plaintiff is entitled to proceed under §605, which has more severe damage provisions. See Int'l Cablevision v. Sykes, 997 F.2d 998 (2d Cir. 1993).

Section 605(e)(3)(C)(i) allows plaintiff the choice of recovering either (I) its actual damages plus the defendant's net profits; or (II) statutory damages. Here, plaintiff has elected statutory damages. The statutory damages consist of an amount awarded in the Court's discretion (i.e., "as the Court considers just"), between $1000 and $10,000 per violation. In addition to these statutory damages, the Court in its discretion may award enhanced or exemplary damages of up to $100,000 if the signal was pirated for commercial use. §605(e)(3)(ii). There is no question that the signal at issue here was pirated for commercial purposes; plaintiff's investigator observed it being shown in the Tavern to an audience of about 25 people.

Courts have utilized different approaches to determine where to fix statutory damages within the range of $1000-$10,000. A number of courts undertake a disgorgement analysis, where they multiply the number of patrons present at the unauthorized event by a presumed ticket price. See, e.g., Time Warner Cable v. Taco Rapido Rest., 988 F. Supp. 107 (E.D.N.Y. 1997); Cablevision Sys. Corp. v. 45 Midland Enters., 858 F. Supp. 42, 45 (S.D.N.Y. 1994). Some courts increase this calculation by presuming the maximum capacity, even if the investigator's report showed that that capacity was not met. See Garden City Boxing Club, Inc. v. Bello, CV-05-1300 (E.D.N.Y. Sept. 20, 2005). Other courts have relied on less tangible considerations, such as how many monitors the defendant used to show the event, whether he collected a

2

cover charge, and whether he advertised the purloined event to attract more business. Some of these courts have also applied a multiplier to some variation of a disgorgement formula. See, e.g., Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc., 146 F. Supp. 2d 955 (E.D. Wis. 2001); Home Box Office v. Champs of New Haven, Inc., 837 F. Supp. 480 (D. Conn. 1993).

The mathematical approach or the consideration of aggravating factors makes sense in a contested matter, where both sides have appeared and all of the facts have been placed before the Court. However, when a defendant has failed to answer legal process and defaulted in a case, the application of such factors unfairly penalizes the plaintiff. Here, for example, it may be the case that defendants locally advertised the stolen event by word of mouth, sandwich board, or pennysaver, if not other means -- it seems unlikely that the Event suddenly popped up on the Tavern's screens without notice to past or potential patrons -- but we do not know. It may be that defendants are regular thieves of satellite signals and this is just the latest, but not the last, instance, but defendants' default again deprives us of that knowledge. It may even be the case that defendants taped the Event and showed it during a discounted Happy Hour the following night; again, we simply do not know. (We do know, from plaintiff's investigator, that at least on December 3, 2005, the Event was shown on multiple monitors at the Tavern.) And while it is reasonable to require a plaintiff to undertake some investigation before bringing this kind of action, as plaintiff here has done, we have to recognize that with statutory damages of $10,000 per violation, there is only so much digging that a court can expect a plaintiff to perform.

Thus handicapped by defendants' decision to not only violate the law, but to ignore the process of this Court, this Court believes that the $10,000 statutory maximum should be the presumptive amount awarded in a single violation case absent any indication in the record of mitigating circumstances. To hold otherwise would encourage defendants caught red-handed to ignore legal process in the recognition that judicial discretion is the only defense they have. This Court will not give them that defense at the cost of punishing plaintiff.

The Court is similarly handicapped in determining the amount of enhanced damages to award. If defendants had appeared, we would examine their financial statements and other financial information, the frequency of their violations, and the extent to which their business depends on this illegal conduct, and then award the minimum amount deemed necessary to ensure that these violations do not recur. In the absence of evidence concerning defendants' finances and conduct, however, the enhanced damages must remain somewhat speculative. The Court is mindful that the speculative nature of the enhanced damages is the defendants' fault, and they should not benefit from it. At the same time, it is clear that with a statutory maximum of $100,000, an aggressive award of enhanced damages may drive a small business to close, and that is not the intent of the statute, unless it is a case in which recurrent theft makes the difference between the business being viable or non-viable.

Under these circumstances, the Court holds that enhanced damages of $10,000 are appropriate. The only information about defendants in the record is that the Tavern is in a busy location in Brooklyn and that it holds up to 50 patrons. Twenty thousand dollars in statutory and enhanced damages should be painful to defendants, but not so painful as

to cause undue hardship. If this analysis is incorrect, the defendants may finally choose to emerge into the light of our legal system, as there are procedures for addressing undue hardship, whether in this Court or others.

Finally, the statute provides for a plaintiff's recovery of costs and attorneys' fees, and the Court finds that plaintiff's claim of $568.41 is reasonable.

An appropriate Judgment on Default will issue.

Dated: Brooklyn, New York
      August 17, 2006

                                                  U.S.D.J.